UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONNA MARIE DAVIS,

 Plaintiff,

v.                   Case No:  6:12-cv-1694-Orl-36TBS

COMMISSIONER OF SOCIAL
SECURITY,

 Defendant.

## REPORT AND RECOMMENDATION[1]

 Plaintiff Donna Marie Davis appeals to the District Court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. (Doc. 1). Plaintiff argues that the ALJ erred by: 1) failing to consider the opinion of psychiatrist, Dr. Ralph Ballentine; 2) failing to consider the testimony of Plaintiff's husband, Steven Davis; 3) failing to account for Plaintiff's dermatitis in assessing Plaintiff's residual functional capacity ("RFC"); and 4) failing to present a hypothetical to the vocational expert that addressed the side effects of Plaintiff's medications. For the following reasons, I recommend that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings consistent with the findings in this report, pursuant to sentence four of 42 U.S.C. § 405(g).

### I.  Analysis

 A.  Dr. Ballentine

---

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Plaintiff argues that the administrative law judge ("ALJ") improperly ignored the opinions of Dr. Ralph Ballentine, including his diagnosis of adjustment disorder with mixed anxiety and a Global Assessment of Functioning ("GAF") score of 50. (Doc. 16, p. 9). The Commissioner maintains that Dr. Ballentine never expressed any opinions regarding Plaintiff's ability to work and that her GAF score is "not entitled to any weight" under the circumstances of this case. (Doc. 17, pp. 7-9).

Judicial review of Social Security disability determinations is "limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); accord Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

In evaluating a claimant's RFC, an ALJ must weigh the opinions and findings of treating, examining, and non-examining physicians. An "opinion" is any statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical or mental restrictions. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011); 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). When confronted with a physician's opinion, the ALJ must state with

particularity the weight given to the opinion and the reasons therefor. Id. (citing 20 CFR. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). A statement by the ALJ is necessary to enable reviewing courts "to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1178-79 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Medical opinions of treating physicians are afforded special weight. Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). This is because treating physicians are more likely "to provide a detailed longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists to discount a treating physician's opinion when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, the opinion is conclusory, or the opinion is inconsistent with the treating physician's medical records. Johnson v. Barnhart, 138 F. Appx. 266, 269 (11th Cir. 2005). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record," the ALJ must give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2). If the ALJ gives less than substantial weight to a treating physician's opinion without clearly articulating why, the court ordinarily must reverse. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

That said, reviewing courts must treat harmless errors in weighing medical opinion evidence the same as other harmless errors. See Caldwell v. Barnhart, 261 Fed. Appx. 188, 191 (11th Cir. 2008). Where, as here, both the claimant and the Commissioner agree that the plaintiff has a severe but not listing-level impairment, an ALJ's error in weighing medical source opinions prejudices the claimant only if the error might have affected the ALJ's assessment of the claimant's RFC. See Id.; James v. Astrue, No. 3:11-cv-226-J-TEM, at *6-7 (M.D. Fla. Mar. 12, 2012).

The statements at issue here come from the treatment notes of Dr. Ballentine, a psychiatrist who treated Plaintiff on four occasions in 2010. Tr. 759-78. Dr. Ballentine diagnosed Plaintiff with adjustment disorder with mixed anxiety, Tr. 762, 768, 773, and assigned her a GAF score of 50. Tr. 763, 769, 774. The ALJ did not mention this diagnosis or GAF score in her decision and did not refer to Dr. Ballentine's notes at all.

Dr. Ballentine's diagnosis and GAF score are unquestionably medical opinions because they "reflect [his] judgments about the nature and severity of [Plaintiff's] impairments." 20 C.F.R. § 404.1527(a)(2).[2] Accordingly, the ALJ was required to evaluate Dr. Ballentine's opinions and state with particularity the weight she afforded them. Winschel, 631 F.3d at 1137-38. Even if Dr. Ballentine did not directly "opine any limitations on Plaintiff's ability to work," (Doc. 17, p. 7), his statements were still opinions that required the ALJ's consideration. The possibility that a doctor's treatment notes "consist largely of Plaintiff's subjective complaints" (Doc. 17, pp. 7-8) is not a valid reason to ignore the doctor's opinions which appear in those notes.

The Commissioner contends that Plaintiff's GAF score "is not entitled to any weight" because there was no evidence that Dr. Ballentine assigned it "based on his . . .

---

[2] Neither Plaintiff nor the Commissioner expresses any opinion on whether Dr. Ballentine was a treating source.

- 4 -

opinion regarding the patient's ability to work." (Doc. 17, p. 8).[3] This argument ignores the Commissioner's own regulations, which require the ALJ to "evaluate every opinion we receive." 20 C.F.R. § 404.1527(c) (emphasis added). See also McPhadden v. Astrue, No. 1:07-cv-00015-MP-WCS, 2007 WL 4403210, at *10 (N.D. Fla. Dec. 12, 2007) ("A GAF score is an assessment by a mental health professional made at the time of treatment, and the opinions of treating physicians must be accorded substantial weight."). While the ALJ had the discretion to afford no weight to the GAF score, under Winschel and the Commissioner's regulations, she had to say so and say why.

The Commissioner's own ALJs do not appear to share her dim view of GAF scores. The ALJ in this case relied on a GAF score of 70, assigned by a psychiatrist named Dr. Lloyd at a consultative examination, in evaluating Plaintiff's residual functional capacity. Tr. 19. The fact that the ALJ relied in part on the higher GAF score while completely ignoring the lower one is all the more reason to reverse. Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983); see also McPhadden v. Astrue, No. 1:07-cv-00015-MP-WCS, 2007 WL 4403210 (N.D. Fla. Dec. 12, 2007) (reversing where ALJ cited GAF score of 55 in support of finding no childhood disability but ignored several lower GAF scores);[4] Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation

---

[3] In support of her position, the Commissioner cites three cases for the proposition that a GAF score doesn't necessarily translate to functional limitations or a listing level impairment. Wind v. Barnhart, 133 Fed. Appx. 684, 692 (11th Cir. 2005); Osterhoudt v. Astrue, No. 8:10-cv-336-T-TGW, 2011 WL 127129, at *4 (M.D. Fla. Jan 14, 2011); Stokes v. Astrue, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *8 (M.D. Fla. Jul. 23, 2009). But an ALJ must consider all medical opinions, not just medical opinions directly regarding functional limitations. 20 C.F.R. § 404.1527(c).

[4] The Commissioner attempts to distinguish McPhadden on the grounds that here, "the ALJ did not base his RFC finding on any of Plaintiff's GAF scores, but rather discussed the record medical evidence in detail." (Doc. 17, p. 9). That of course, is not entirely true; the ALJ invoked Dr. Lloyd's GAF score of 70 in support of her RFC assessment. Tr. 20.

The Commissioner also points out that McPhadden is not binding on this Court–a paragraph after she cites dictum in a footnote in an unpublished Eleventh Circuit opinion and two unpublished cases from this District. McPhadden may not be binding, but the Court finds its reasoning persuasive. Winschel,

- 5 -

to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The ALJ was required to evaluate Dr. Ballentine's opinions and state with particularity the weight she afforded them. Instead, the ALJ ignored Dr. Ballentine's opinions entirely. This was error which, under the circumstances of this case, I cannot dismiss as harmless. While it is true that a GAF score of 50 does not mandate a finding of disabled,[5] it does indicate that on the day Dr. Ballentine made the determination, Plaintiff suffered from "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairments in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." (Doc. 16, p. 7 n. 4); <u>Diagnostic & Statistical Manual of Mental Disorders</u> (DSM-IV-TR), p. 34 (4th ed., Text Revision). Dr. Ballentine's opinion could therefore have affected the ALJ's assessment of Plaintiff's RFC. Consequently, remand is necessary to allow the Commissioner to properly consider Dr. Ballentine's opinions.

B. <u>Mr. Davis</u>

Plaintiff maintains that the ALJ erred in ignoring the third party function report completed by her husband, Steven Davis. (Doc. 16, pp. 11-12). The Commissioner argues that this was not error because Mr. Davis's report "mirrors Plaintiff's report and testimony, which the ALJ thoroughly discussed, considered, and properly found to be not credible to the extent alleged." (Doc. 17, pp. 9-10).

---

however, is binding, and requires the ALJ to consider all medical opinions. So too is <u>Tieniber</u>, which requires the Court to consider the whole record, and not just the parts the ALJ cited, in determining whether the Commissioner's decision is supported by substantial evidence. Those cases require the Court to reverse when the ALJ cites a medical opinion in support of her decision while ignoring entirely a contrary medical opinion on the exact same point.

[5] Plaintiff suggests "Dr. Ballentine indicated that Ms. Davis has 'serious symptoms' like being 'unable to hold a job.'" (Doc. 16, p. 11). Of course, as the Commissioner points out, Dr. Ballentine never said anything of the sort. (Doc. 17, p. 8, n. 7).

An ALJ must decide the case based on the record as a whole, and the court reviews a final decision for substantial evidence in the record as a whole. The ALJ must therefore consider all of the evidence in the record, and although she need not specifically refer to every piece of evidence, she must "explain the weight . . . afforded to obviously probative exhibits." Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 835 (11th Cir. 2011).

Testimony from family members is unquestionably evidence of a claimant's subjective symptoms. Osborn v. Barnhart, 194 Fed. Appx. 654, 669 (11th Cir. 2006). However, an ALJ's failure to discuss a family member's statements regarding a claimant's condition is not always reversible error. If the family member's testimony largely corroborates the claimant's testimony, rejection of the family member's testimony may be "implicit in the rejection of the claimant's testimony." Osborn, 194 Fed. Appx. at 666 (citing Tieniber v. Heckler, 720 F.3d 1251, 1253 (11th Cir. 1983)).

The statements at issue here come from a third party function report completed by Mr. Davis. Tr. 186-194. In that report, he indicated that Plaintiff is "t[ir]ed from the start of the day," and gets short of breath easily when walking or doing other physical activities like lifting, squatting, bending, reaching, and climbing stairs. Tr. 188, 191. According to Mr. Davis, Plaintiff used to be very active, but now she watches TV and rarely goes outside because of her asthma. Tr. 189, 194. Mr. Davis also stated that Plaintiff gets short of breath when showering, often skips showers, has difficulty sleeping, and only sleeps a couple hours per night. Tr. 188.

Mr. Davis also stated that he and Plaintiff's son take care of Plaintiff. Tr. 188. In particular, Mr. Davis does the housework, which Plaintiff is unable to do because of sensitivity to dust. Tr. 193. He noted that Plaintiff enjoys cooking, but is unable to cook

- 7 -

anymore because of her conditions.  Tr. 193.  He also noted that Plaintiff is unable to engage in activities she enjoys, such as bowling, helping out in the community, and socializing with friends.  Tr. 190-91, 194.

Mr. Davis's statements largely corroborate Plaintiff's testimony and other statements.  The ALJ's partial rejection of Mr. Davis's report is implicit in the ALJ's partial rejection of Plaintiff's testimony, which the ALJ found to overstate the severity of Plaintiff's symptoms.  Tr. 17-21.  Therefore, the ALJ's failure to discuss Mr. Davis's statements is not reversible error.

### C. Dermatitis

Plaintiff argues that the ALJ erred in failing to account for her dermatitis, which the ALJ determined at step two to be "severe," in Plaintiff's RFC assessment.  (Doc. 16, pp. 12-16).  The Commissioner defends the ALJ's RFC assessment on several grounds.  According to the Commissioner, the ALJ considered dermatitis, "thoroughly discussed the medical evidence relating to that impairment," and incorporated it into the RFC by restricting Plaintiff from "even moderate exposure to fumes, gases, odors, dusts, and poor ventilation."  (Doc. 17, p. 10).  The Commissioner also argues that the ALJ was not required to assess limitations due to dermatitis because there was no evidence in the record that dermatitis caused Plaintiff any work-related limitations.  (Id.).

An impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c); 404.1521(a).  Severe and non-severe impairments and related symptoms "may cause physical or mental limitations that affect what [a claimant] can do in a work setting."  20 C.F.R. § 404.1545(a)(1).  A claimant's RFC is "the most [work a claimant] can do despite [those] limitations."  Id.  To evaluate a claimant's RFC, an ALJ

- 8 -

must "consider all . . . medically determinable impairments," severe or nonsevere. Id., § 404.1545(a)(2).

Here, the ALJ stated that she "considered all [of Plaintiff's] symptoms" in arriving at Plaintiff's RFC. Tr. 15. And, the ALJ discussed in detail medical records pertaining to Plaintiff's dermatological condition. See Tr. 18-19. The ALJ did not, however, explain how Plaintiff's dermatitis affected her ability to work, and it not entirely clear that the ALJ's RFC assessment contains any limitations stemming from Plaintiff's dermatitis. The Commissioner points to the restriction regarding exposure to "fumes, gases, odors, dusts, and poor ventilation." (Doc. 17, p. 10). It is plausible that the ALJ imposed this limitation in part because of Plaintiff's dermatitis, especially given Plaintiff's testimony that she has to "be careful what [she] touches." Tr. 47. But the ALJ did not explicitly make that connection and the restriction strikes the Court as being more obviously related to Plaintiff's respiratory ailments, including asthma and COPD.

It seems odd that an impairment that "significantly limits" a claimant's ability to work, 20 C.F.R. § 404.1520(c), could have no effect on what work a claimant can do despite the claimant's limitations, 20 C.F.R. § 404.1545(a)(2). Some courts have found grounds for reversal in this apparent inconsistency. Norman v. Astrue, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5-6 (W.D. Tex. July 18, 2011); Lester v. Astrue, Civil Action No. 5:10-00380, 2011 WL 4344019, at *11 (S.D.W. Va. Aug. 19, 2012); Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003); Gray v. Massanari, No. CA 00-0739-CB-C, 2001 WL 530704, at *2 (S.D. Ala. May 1, 2001). See also Raduc v. Comm'r of Soc. Sec., 380 Fed. Appx. 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities.").

But, the prevailing rule is that an ALJ does not err solely because she finds an impairment "severe" at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC. See, e.g., Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting claimant's contention that ALJ decision was "internally inconsistent," where ALJ found that an impairment was severe but failed to include limitations relating to impairment in RFC assessment); Griffeth v. Comm'r of Soc. Sec., 217 Fed. Appx. 425, 427-28 (6th Cir. 2007) (same); Walters v. Barnhart, 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001) (a finding that an impairment is severe "is not tantamount to a conclusion that these impairments imposed significant work-related limitations"); Dowdy v. Barnhart, No. 1:04cv1056, 2005 WL 3841868, at *4 (M.D. Ala. Jan 4, 2005) (a severe impairment will not necessarily impose "significant work-related limitations" for purposes of RFC); Hines v. Astrue, No. 11-cv-262-PB, 2012 WL 2752192, at *9 (D.N.H. July 9, 2012) ("An ALJ's finding that an impairment is severe does not necessarily translate into functional restrictions in the RFC."). These courts reason that the severity standard applied at step two is simply a "de minimis" hurdle meant to weed out obviously non-meritorious claims. See Griffeth, 217 Fed. Appx. at 428. Thus, a finding that a claimant's impairment is "severe" does not necessarily mean that the impairment will affect an RFC determination. I agree with this reasoning. The Eleventh Circuit has held that "[s]tep two is a threshold inquiry" for which "[t]he claimant's burden is mild." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). Only "the most trivial impairments" may be rejected. Id. If "the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience," only then may an ALJ find an impairment to be non-severe. Id. An impairment may meet this minimal definition of severity without materially affecting the

claimant's RFC.  The ALJ's failure to identify any dermatitis-related limitations in Plaintiff's RFC assessment was therefore not inconsistent with her step-two finding that Plaintiff's dermatitis was severe.

Nor was it error for the ALJ, on the record before her, to omit any limitation attributable to Plaintiff's dermatitis from her RFC assessment.  Plaintiff faults the ALJ for failing to "include limitations from dermatitis that [the ALJ] herself noted, like extensive skin rash in the upper extremities, hospitalizations, and long-lasting skin lesions."  (Doc. 16, p. 14).  Plaintiff mistakes conditions, signs, and symptoms for limitations.  An ALJ must "specifically account" for all of a claimant's <u>limitations</u> in the RFC assessment and in hypotheticals to the vocational expert.  <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1181 (11th Cir. 2011).  An impairment that causes no independent limitations will not affect the RFC assessment.  Unless Plaintiff's dermatitis limited her functioning in ways not already encompassed in the RFC, there is no basis for finding that Plaintiff's RFC did not "comprise all of [her] impairments."  <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002).

Plaintiff points to no evidence in the record indicating that her dermatitis limited her ability to work in some way unaccounted for by the ALJ's RFC and hypothetical.  She speculates in her memorandum of law that her "extensive skin rash on her trunk and upper extremities" would affect her ability to perform tasks requiring movement of her upper body. (Doc. 16, p. 16).  But there is no support for this speculation in Plaintiff's testimony or in the medical records.  Plaintiff testified that, even when her dermatitis was

"bad," she was still able to work.[6]  Thus, the ALJ's failure to tie a specific functional limitation to Plaintiff's dermatitis was not reversible error.

### D. Side-Effects of Medications

Plaintiff argues that the ALJ erred in failing to make any finding as to the work-limiting effects of the side effects of Plaintiff's medications.  (Doc. 16, pp. 17-18).  The Commissioner maintains that the evidence of side effects in the record is so minimal that the ALJ did not need to consider them, or alternatively, that the ALJ adequately considered Plaintiff's side effects.  (Doc. 17, p. 12).

The ALJ has a duty to investigate possible side effects of medications taken by a claimant and to consider those side effects when evaluating a claimant's RFC.  Lipscomb v. Comm'r of Soc. Sec., 199 Fed. Appx. 903, 906 (11th Cir. 2006) (citing Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981)).  But, the ALJ is not required to inquire into detail about side effects when a claimant is represented by counsel at a hearing.  Cherry v. Heckler, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985).  And, when a claimant fails to complain about side effects to the agency and doctors do not express any concerns

---

[6] Specifically, when the ALJ asked Plaintiff if she had any problems with her hands, Plaintiff responded:

> Dry skin, my dermatitis, my contact dermatitis. Yeah, it's very bad. I had–
> you know what? This is a story. This is a little story. I had it so bad one
> time that I was at the doctor's office, and it was scary. They were nice
> about it, though. I had it all over my hands one time. We didn't want to
> scare the patients, because I had to deal with patients, too, even though
> it's mostly administration. I have to hand them their scripts.
>
> Now, they have to be careful. They don't want to–they think they're going
> to catch it. I had it so bad on my hands one time, they were like, am I going
> to catch that. It's like, D.D., you work in the back now because they were
> afraid they were going to catch it. You know, my hands get a breakout,
> sometimes maybe my face and my back.

Tr. 55. Thus, despite severe dermatitis on her hands, Plaintiff was still able to do administrative work as a receptionist and referrals coordinator at a doctor's office, work which required her to write, type, or handle small objects for three hours out of five in a typical work day. Tr. 199.

- 12 -

about side effects, the ALJ need not incorporate side effects into the claimant's RFC assessment. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 2010).

The hearing transcript contains little discussion regarding medication side effects. Plaintiff was represented at the administrative hearing (though by a non-attorney), and she does not allege that the ALJ shirked her duty to develop the record on this issue. Plaintiff therefore takes the administrative record as she finds it.

For most of the side effects Plaintiff mentions in her brief, the evidence in the record is too scant to fault the ALJ for failing to consider them or ask about them at the hearing. French v. Massanari, 152 F. Supp. 2d 1329, 1337-38 (M.D. Fla. 2001) (no error for ALJ not to inquire about side effects where claimant did not allege that side effects contributed to her disability). The one exception is tremors. Plaintiff consistently raised either "tremors" or "can't sit still" in documentation submitted to the state agency. See Tr. 165, 171, 175, 244. Medical records also support the side effect of tremors. See Tr. 657 (physician observes that Plaintiff "seems to be fairly agitated at this time, probably from albuterol"); Tr. 668 (physician observes that Plaintiff becomes "shaky with albuterol and theophylline"); Tr. 809 ("[S]he also gets some shakes.").[7]

In her decision, the ALJ twice noted Plaintiff's reports that her medications cause her to have tremors. Tr. 16, 19. However, the ALJ also states that "treatment records do not indicate . . . any medication side effects." Tr. 21. This is simply false; as noted above, medical records do indicate tremors and shaking due to albuterol and theophylline. Tr. 657, 668, 809.

---

[7] The Commissioner notes in her memorandum of law that physicians continued to prescribe albuterol "despite Plaintiff's complaints of side effects." (Doc. 17, p. 12 n.12). The fact that Plaintiff's physicians kept prescribing albuterol despite the side-effects may say more about the severity of Plaintiff's asthma than the mildness of her medication's side-effects. In any event, because the ALJ did not base her decision on that rationale, the Commissioner may not advance it on review. Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (citing SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)).

The ALJ's failure to make any finding regarding Plaintiff's tremors was not harmless error. The Commissioner's only reason for rejecting Plaintiff's complaints of side effects was her erroneous observation that "treatment records do not indicate . . . any medication side effects," and the Court cannot provide a different reason for the ALJ on review. Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (citing SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)). The only way this error could have been harmless would have been if the side effects were clearly not capacity-limiting. "Shaking" may not seem like a particularly debilitating side effect, but it can have a significant impact on a claimant's suitability for a wide range of jobs. Tremors would likely prevent someone from working as a Toy Assembler, DOT § 731.687-034 (Light, SVP 2),[8] a job that, based on the ALJ's hypothetical, the Vocational Expert opined Plaintiff could do. Tr. 61. More serious tremors could interfere with activities like writing that are important to many occupations. Had the ALJ's hypothetical incorporated tremor-related limitations, the Vocational Expert may have reached a different conclusion regarding what jobs Plaintiff could do. Remand is warranted because the ALJ failed to properly consider the side effects of Plaintiff's medications in assessing her RFC.

## II. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Commissioner's final decision in this case be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

2. The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

---

[8] A toy assembler's job tasks may include "position[ing] parts [of toys] . . . using hands, tweezers, or pliers," and "[a]ssembling and fasten[ing] parts of toys together, using clips, glue, jig, screws, dowels, nails, handtools, and portable powered tools." Id.

- 14 -

3. Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

4. Plaintiff be directed that upon receipt of such notice, he shall promptly email Mr. Rudy and the OGC attorney who prepared the Government's brief to advise that the notice has been received.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on September 30, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record